USDC- BALTIMORE
'22 AUG 4 PM12:13

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**HAKAN AGRO DMCC, HAKAN ORGANICS DMCC, GOKSAL BEYAZ, MUSTAFA CAKIROGLU, AND NURAY BEYAZ,**<br><br>**Defendants.** | **CRIMINAL NO.** JRR-22-274<br><br>**(Conspiracy to Defraud the United States, to Smuggle Goods into the United States, to Commit Wire Fraud, and to Make False Statements, 18 U.S.C. § 371; Smuggling, 18 U.S.C. § 545; Wire Fraud, 18 U.S.C. § 1343; Aiding and Abetting, 18 U.S.C. § 2; Forfeiture, 18 U.S.C. §§ 545, 981 and 982, 28 U.S.C. § 2461)** |

# INDICTMENT

## COUNT ONE

(Conspiracy to Defraud the United States, to Smuggle Goods into the United States, to Commit Wire Fraud, and to Make False Statements)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Indictment:

### Introduction

A. ***Persons and Business Entities***

1. Defendant **HAKAN AGRO DMCC** (“**HAKAN AGRO**”) was a United Arab Emirates company with its principal place of business located in Dubai, United Arab Emirates. **HAKAN AGRO** headed a group of affiliated entities, the “Hakan Group,” which together operated a network of warehouses, processing facilities, and logistics facilities to support supply chains of agricultural commodities throughout the world.

2. Defendant **HAKAN ORGANICS DMCC** (“**HAKAN ORGANICS**”) was a subsidiary of **HAKAN AGRO** based in Dubai. **HAKAN ORGANICS** was a United States Department of Agriculture (“USDA”)-certified organic handler.

3. Defendant **GOKSAL BEYAZ** was a resident of Turkey, who served as the Chairman of Turkish Affiliate, as well as the General Coordinator of **HAKAN ORGANICS**. In February 2014, **HAKAN ORGANICS** entered into an agreement with and granted power of attorney to **GOKSAL BEYAZ.**

4. Defendant **MUSTAFA CAKIROGLU** was a resident of Turkey, who served as the Import Export Operations Manager of **HAKAN ORGANICS** and Turkish Affiliate.

5. Defendant **NURAY BEYAZ** was a resident of Turkey who served as an Import Export Assistant Specialist for **HAKAN ORGANICS** and Turkish Affiliate.

6. **GOKSAL BEYAZ, MUSTAFA CAKIROGLU, NURAY BEYAZ,** and others known and unknown to the Grand Jury acted as agents of, and for the intended benefit, at least in part, of **HAKAN AGRO** and **HAKAN ORGANICS**.

7. “Turkish Affiliate” was a Turkish company with its principal place of business located in Gaziantep, Turkey. Until its certification was revoked, Turkish Affiliate was a USDA-certified organic handler. Turkish Affiliate was controlled by its Chairman, **GOKSAL BEYAZ,** and had a business relationship with **HAKAN AGRO.**

8. “Company A,” was a corporation organized in the state of Georgia, with its principal place of business located in the state of Virginia. Company A was a USDA-certified organic operation. Company A had a business relationship with **HAKAN AGRO**.

9. “Company B” was a corporation organized and with its principal place of business in the state of Maryland. Company B was a USDA-certified organic operation. On

November 30, 2016, Company B signed a trade agency agreement with **HAKAN ORGANICS** "and its affiliates" to act as their sales agent in North America.

10. "Company C" was an agricultural operation located in Rostov-on-Don, Russia. Company C was a certified organic handler, until it surrendered its certification to the USDA in early 2018. Company C had a business relationship with **HAKAN ORGANICS.**

11. "Company D" was an agricultural operation located in Mardin, Turkey. Company D was a USDA-certified organic operation until its certification was suspended in mid-2017. Company D had a business relationship with **HAKAN ORGANICS**.

12. "Company E" was an agricultural operation located in Varna, Bulgaria. Company E was a certified organic operation, and had a business relationship with **HAKAN ORGANICS**.

13. "Organic Certifier 1" was an independent certifying agent accredited by the USDA with offices in multiple countries. Organic Certifier 1 was the certifying agent for **HAKAN ORGANICS** and others.

14. "Organic Certifier 2" was an independent certifying agent accredited by the USDA with offices in multiple countries. Organic Certifier 2 was the certifying agent for Turkish Affiliate and others.

15. "Organic Certifier 3" was an independent certifying agent accredited by the USDA with offices in multiple countries. Organic Certifier 3 was the certifying agent for Companies C and D, and others.

16. "Individual A" was a resident of Dubai, United Arab Emirates, who served as a Director of **HAKAN AGRO**, as well as the President of Company A.

17. "Individual B" was a resident of Maryland, who served as a Manager of Company B.

18. "Individual C" was a resident of Virginia, who served as a Manager of Company A.

19. "Individual D" was a resident of Turkey, who served as the Import Export Execution Supervisor of **HAKAN ORGANICS** and Turkish Affiliate.

20. "Organic Customer A" was an importer and exporter of organic grains, seeds, and feed ingredients, with offices in multiple countries.

21. "Soy Provider" or "SP" was a large corporation whose business included buying and selling grains, seeds, and feed ingredients, with offices in multiple countries.

22. "SP Registered Agent" or "SPRA" was Soy Provider's registered agent in Turkey.

23. "Romanian Supplier 1" was a corporation based in Constanta, Romania, whose business included selling agricultural commodities. Romanian Supplier 1 did not have an organic certification.

24. "Romanian Supplier 2" was a corporation based in Galati, Romania, whose business included exporting agricultural commodities. Romanian Supplier 2 did not have an organic certification.

**B. *"Organic" Agricultural Products and the National Organics Program***

25. The Organic Food Production Act of 1990 ("OFPA"), 7 U.S.C. §§ 6501-6524, was enacted to establish uniform national standards for the production and handling of foods labeled as "organic." The OFPA authorized a National Organic Program ("NOP") to set national standards for the production, handling, and processing of organically grown agricultural products. The standards are found in 7 C.F.R. Part 205. The USDA is the federal agency that administered the NOP.

26. The NOP oversees the certification of operations that grow or handle organic agricultural goods. Certification is carried out by independent certifying agents accredited by the USDA. 7 C.F.R. §§ 205.400-205.406; 205.500-205.510.

27. There are strict requirements for agricultural goods sold, labeled, or represented as "organic," including requirements governing how they are grown, processed, handled, and transported. Agricultural goods sold, labeled, or represented as "organic" may only be produced on farms that are certified organic by a certifying entity registered with the USDA. 7 C.F.R. § 205.100 *et seq*. In addition, organic goods can only be handled by handling operations that are certified organic. An uncertified operation may not produce, handle, or process agricultural products to be sold as organic. 7 C.F.R. § 205.100 *et seq.*

28. There are also regulations governing what substances, such as pesticides and fungicides, can be applied to organic products. In general, application of synthetic substances is prohibited in organic production and handling. 7 C.F.R. § 205.105. Aluminum phosphide, a toxic inorganic compound commonly used as a fumigant for pest control, is prohibited from being applied to organic goods.

29. For goods sold in the United States, foreign operations are subject to the same requirements as domestic operations. Organic products produced abroad that are verified to be in compliance with USDA regulations or equivalency arrangements can be imported into the United States for sale as certified organic. 7 U.S.C. §§ 6505, 6514; 7 C.F.R. § 205.300(c).

30. Any operation or person that makes a false statement under the OFPA to the USDA or to an accredited certifying agent is subject to the provisions of 18 U.S.C. § 1001. 7 U.S.C. § 6519(c)(2); 7 C.F.R. § 205.100(c)(2).

## The Charge

31. Beginning at a time unknown to the Grand Jury, but not later than on or about November 19, 2015, and continuing to at least on or about May 22, 2017, in the District of Maryland and elsewhere, Defendants,

**HAKAN AGRO,**
**HAKAN ORGANICS,**
**GOKSAL BEYAZ,**
**MUSTAFA CAKIROGLU,** and
**NURAY BEYAZ,**

and individuals known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to commit offenses against the United States, specifically:

a. to defraud the United States, that is, to hamper, hinder, impede, impair, and obstruct by craft, trickery, deceit, and dishonest means, the lawful and legitimate functions of the United States Department of Agriculture in administering and enforcing the National Organics Program, in violation of 18 U.S.C. § 371;

b. to fraudulently and knowingly import into the United States merchandise (that is, soybeans and corn) contrary to law, including 7 U.S.C. §§ 6504, 6505, and 7 C.F.R. §§ 205.100, 205.102, and 205.105, in violation of 18 U.S.C. § 545;

c. to transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1343; and

d. to knowingly and willfully make materially false, fictitious, and fraudulent statements, and representations in a matter within the jurisdiction of an agency of the United States, namely the United States Department of Agriculture, in violation of 18 U.S.C. § 1001.

**Manner and Means of the Conspiracy**

Among the means and methods employed by the Defendants and others known and unknown to the Grand Jury to carry out the conspiracy and effect its unlawful objects were the following:

32. The Defendants and others known and unknown to the Grand Jury would arrange to purchase non-organic corn from Romania and non-organic soybeans from Ukraine.

33. The Defendants and others known and unknown to the Grand Jury would sell the acquired grains to Organic Customers in the United States as "organic" using false and fraudulent paperwork and misrepresentations.

34. The Defendants and others known and unknown to the Grand Jury would arrange shipment of the grains to the United States, either directly or via Turkey.

35. The Defendants and others known and unknown to the Grand Jury would specify that aluminum phosphide be used as a fumigant for shipments of soybeans.

36. The Defendants and others known and unknown to the Grand Jury would apply to Organic Certifiers for transaction certificates for the grains to be shipped using various false records and statements claiming the grains were organic.

37. Selling the non-organic grains as organic allowed the conspirators to fraudulently charge higher prices associated with organic grains, which cost up to 50% more than conventional (non-organic) grain.

**Overt Acts**

38. In furtherance of the conspiracy, and to accomplish the objectives of the conspiracy, the Defendants and others did commit the following overt acts, among others, in the District of Maryland and elsewhere:

***Overt Acts Relating to the M/V Sagittarius***

Overt Act 1. On or about November 24, 2015, **HAKAN AGRO** entered a contract with SP for the purchase of 10,000 metric tons ("MT") of non-organic "Non GMO Ukrainian Soybeans" for $423/MT.

Overt Act 2. On or about December 2, 2015, **NURAY BEYAZ**, agreed via email (with **GOKSAL BEYAZ** and **MUSTAFA CAKIROGLU** copied) to the non-organic soybeans being shipped from Ukraine to Turkey aboard the *M/V Nazlim*.

Overt Act 3. On or about December 4, 2015, **GOKSAL BEYAZ** and **NURAY BEYAZ** (with **MUSTAFA CAKIROGLU** copied) specified via email the precise method of aluminum phosphide fumigation they required for the soybeans shipped aboard the *M/V Nazlim*.

Overt Act 4. On or about December 4, 2015, **GOKSAL BEYAZ** and **HAKAN AGRO** agreed to purchase an additional 8,000 MT of non-organic "Non-GMO Ukrainian Soybeans" from SP for $430/MT. **MUSTAFA CAKIROGLU** and **NURAY BEYAZ** were copied on the email confirming this purchase. These soybeans were to be shipped aboard the *M/V Zeus*.

Overt Act 5. On or about December 12, 2015, **MUSTAFA CAKIROGLU** and others applied to Organic Certifier 1 for organic transaction certificates for organic soybeans purportedly shipped aboard the *M/V Nazlim* from Russia to Turkey. The application included documents falsely indicating the soybeans had been sourced from Russia.

Overt Act 6. In or about January 2016, **GOKSAL BEYAZ**, Turkish Affiliate, and others sold non-organic soybeans purchased from SP, and shipped to Turkey from Ukraine aboard the *M/V Nazlim* and *M/V Zeus,* to Organic Customer A as organic soybeans for $614.50/MT (totaling $4,977,450).

Overt Act 7. On or about February 10, 2016, **HAKAN AGRO** sent payment to SP for the non-organic soybeans shipped aboard the *M/V Zeus*.

Overt Act 8. In or about February 2016, **GOKSAL BEYAZ**, Turkish Affiliate, and others arranged for approximately 8,100 MT of non-organic soybeans to be loaded aboard the *M/V Sagittarius* and shipped to Baltimore, Maryland.

***Overt Acts Relating to the M/V Harriett***

Overt Act 9. On or about February 29, 2016, **GOKSAL BEYAZ** and Turkish Affiliate offered to sell 12,500 MT of purportedly organic corn to Organic Customer A.

Overt Act 10. On or about March 1, 2016, **HAKAN AGRO** negotiated to purchase non-organic corn from Romanian Supplier 1 for 155 EUR/MT (or about $168.57/MT).

Overt Act 11. On or about March 3, 2016, **MUSTAFA CAKIROGLU** sent an email (with **GOKSAL BEYAZ** copied) to Organic Customer A confirming that the *M/V Harriett* would carry 12,500 MT of (purportedly) organic corn from Constanta, Romania, to Baltimore, Maryland.

Overt Act 12. On or about March 4, 2016, **MUSTAFA CAKIROGLU** sent an email (with **GOKSAL BEYAZ** copied) to Romanian Supplier 1 regarding a draft contract for the purchase of 32,500 MT of non-organic corn being sold "FOB – Constanta."

Overt Act 13. On or about March 5, 2016, **MUSTAFA CAKIROGLU** sent an email (with **GOKSAL BEYAZ** copied) to Romanian Supplier 1, stating, "**HAKAN AGRO** have no license to export goods at Romania. Buyer should be [Company E]" (emphasis added).

Overt Act 14. On or about March 7, 2016, after Organic Customer A requested to sample the corn in question prior to loading onto the *M/V Harriett*, **MUSTAFA CAKIROGLU** responded via email, (with **GOKSAL BEYAZ** copied), "Your request does not match up with our contractual terms, unfortunately we will not be able to help you with your request."

Overt Act 15. On or about March 30, 2016, **HAKAN ORGANICS** issued a series of invoices to Organic Customer A for the corn shipped aboard the *M/V Harriett*. The price charged was $247/MT and the invoices totaled over $3,396,000.

Overt Act 16. In or about April 2016, **HAKAN ORGANICS** applied for an organic transaction certificate for the corn shipped aboard the *M/V Harriett*. In the application, **HAKAN ORGANICS** included false records indicating the corn had been sourced from Company C, and shipped from Novorossiysk, Russia, to Constanta, Romania, aboard the *M/V Sea Amore*.

***Overt Acts relating to the M/V Four Diamond***

Overt Act 17. On or about December 10, 2015, **HAKAN AGRO** agreed to purchase 7,000 MT of non-organic soybeans from SP for $420/MT.

Overt Act 18. On or about January 14, 2016, **HAKAN AGRO** entered a contract with SP for the purchase of 7,000 MT of "Non GMO Ukrainian Soybeans."

Overt Act 19. On or about March 18, 2016, after being informed that the non-organic soybeans would be shipped aboard the *M/V Neco K* from Ukraine to Turkey, **NURAY BEYAZ** specified in an email (with **GOKSAL BEYAZ** and **MUSTAFA CAKIROGLU** copied) the precise method of fumigation with aluminum phosphide they required for these soybeans.

Overt Act 20. In or about April 2016, **HAKAN ORGANICS** and **MUSTAFA CAKIROGLU** applied for an organic transaction certificate for organic soybeans purportedly shipped aboard the *M/V Neco K.* According to the application documents, the soybeans were purchased from Company C and shipped from Novorossyisk, Russia, to Turkey.

Overt Act 21. In or about April 2016, **MUSTAFA CAKIROGLU** applied for an organic transaction certificate for organic soybeans purportedly shipped aboard the *M/V Ice Dragon*. According to the application documents, the soybeans were purchased from Company C and shipped from Novorossyisk, Russia, to Turkey. **GOKSAL BEYAZ** and **NURAY BEYAZ** were copied on the email transmitting the application.

Overt Act 22. In or about April 2016, **GOKSAL BEYAZ** agreed to purchase an additional 13,750 MT of non-organic soybeans from SP. These soybeans were to be shipped from Ukraine to Turkey aboard the *M/V Mohac*.

Overt Act 23. In or about October 2016, **GOKSAL BEYAZ** agreed to purchase an additional 11,635 MT of non-organic soybeans from SP. These soybeans were to be shipped from Ukraine to Turkey aboard the *M/V Cecela S.*

Overt Act 24. In or about November 2016, **NURAY BEYAZ** and Turkish Affiliate requested organic transaction certificates for purportedly organic soybeans shipped aboard the *M/V Four Diamond* from Turkey, to Stockton, California. **GOKSAL BEYAZ** and **MUSTAFA CAKIROGLU** were copied on the email transmitting the applications.

Overt Act 25. In or about November 2016, Turkish Affiliate issued a series of invoices to Company A for the soybeans shipped aboard the *M/V Four Diamond*.

Overt Act 26. In or about December 2016, Company B, in Maryland, issued Invoice No. 1 to **HAKAN ORGANICS** for costs associated with soybeans shipped aboard the *M/V Four Diamond.*

Overt Act 27. On or about January 10, 2017, **HAKAN AGRO** made a partial payment to Company B for Invoice No. 1 (issued to **HAKAN ORGANICS**).

Overt Act 28. In late 2016 and early 2017, **GOKSAL BEYAZ, MUSTAFA CAKIROGLU**, and others arranged for Company B to sell in the United States approximately 16,250 MT of soybeans shipped aboard the *M/V Four Diamond* as organic for over $10,000,000.

***Overt Acts Relating to the M/V Crinis***

Overt Act 29. On or about May 10, 2016, **MUSTAFA CAKIROGLU** and **HAKAN ORGANICS** applied for an organic transaction certificate for organic corn purportedly shipped from Russia to Turkey (with **GOKSAL BEYAZ** and **NURAY BEYAZ** copied on the email transmitting the application). According to the application documents the corn was purchased from Company C and shipped aboard the *M/V Venus Bay* from Novorossiysk, Russia, to Turkey.

Overt Act 30. On or about May 10, 2016, **MUSTAFA CAKIROGLU** and **HAKAN ORGANICS** applied for an organic transaction certificate for organic corn purportedly shipped from Russia to Turkey (with **GOKSAL BEYAZ** and **NURAY BEYAZ** copied on the email transmitting the application). According to the application documents the corn was purchased from Company C and shipped aboard the *M/V Sea Prosperity* from Novorossiysk, Russia, to Turkey.

Overt Act 31. On or about September 30, 2016, **HAKAN ORGANICS** and others arranged to purchase 20,000 MT of non-organic corn from Romanian Supplier 2 for 158 EUR/MT (or about $177/MT), with payment to come from **HAKAN AGRO**.

Overt Act 32. On or about October 24, 2016, **HAKAN ORGANICS, GOKSAL BEYAZ, MUSTAFA CAKIROGLU,** and others arranged to purchase an additional 10,000 MT of non-organic corn from Romanian Supplier 2.

Overt Act 33. On or about October 27, 2016, **HAKAN ORGANICS, GOKSAL BEYAZ, MUSTAFA CAKIROGLU,** and others nominated the *M/V Diamond A* to carry 15,000 MT of non-organic corn purchased from Romanian Supplier 2 from Romania to Turkey.

Overt Act 34. On or about November 8, 2016, **HAKAN AGRO, HAKAN ORGANICS, GOKSAL BEYAZ, MUSTAFA CAKIROGLU, NURAY BEYAZ,** and others nominated the *M/V Lena* to carry 6,300 MT of non-organic corn purchased from Romanian Supplier 2 from Romania to Turkey.

Overt Act 35. On or about November 8, 2016, **NURAY BEYAZ** sent a "documentary instruction" [a document reciting **HAKAN ORGANIC**'s requirements for things such as labeling and describing the goods in question] via email (with **GOKSAL BEYAZ** and **MUSTAFA CAKIROGLU** copied) to SPRA for the "yellow corn" being shipped aboard the *M/V Lena* to Turkey.

Overt Act 36. On or about January 14, 2017, **HAKAN ORGANICS** and **MUSTAFA CAKIROGLU** helped arrange for the *M/V Crinis* to carry purportedly organic corn from Turkey to Baltimore, Maryland.

Overt Act 37. In or about January and February 2017, **HAKAN ORGANICS, MUSTAFA CAKIROGLU** and others arranged for Company D to sell 21,000 MT of corn to Company A, which in turn sold it to Company B, which invoiced Organic Customer A for $6,783,000. The invoice was for 21,000 MT of "NOP Certified Organic Corn."

Overt Act 38. On or about February 8, 2017, **NURAY BEYAZ** sent an email to Company A (with **GOKSAL BEYAZ** and **MUSTAFA CAKIROGLU** copied) regarding the *M/V Crinis*, and stated "Please find attached shipment documents and please note that these documents must be used for customs clearance and please do not share with any part[y], this is most important thing for us. I will send documents for using at the certification side" (emphasis in original).

Overt Act 39. On or about February 15, 2017, **NURAY BEYAZ** applied to Organic Certifier 3 for an organic transaction certificate on behalf of Company D for the corn shipped aboard the *M/V Crinis*, using a transaction certificate previously issued for the corn purportedly shipped aboard the *M/V Venus Bay* and *M/V Sea Prosperity* from Russia as the source of the corn.

***Overt Acts Relating to the M/V Daiwan Fortune***

Overt Act 40. On or about August 15, 2016, **HAKAN AGRO** entered into a contract for the purchase of 15,000 MT of non-organic "Non GMO Ukrainian soybeans" from SP.

Overt Act 41. On or about December 1, 2016, after SPRA nominated the *M/V Puffin S* to carry the soybeans, **NURAY BEYAZ** sent an email to SPRA (with **GOKSAL BEYAZ** and **MUSTAFA CAKIROGLU** copied) with **HAKAN AGRO**'s "documentary instruction." This document included the directive that the soybeans be fumigated with aluminum phosphide using the "sleeves method."

Overt Act 42. In or about December 2016, **HAKAN AGRO** arranged to purchase non-organic soybeans shipped to Turkey from Ukraine aboard the *M/V Blue Horizon*.

Overt Act 43. On or about February 4, 2017, **HAKAN AGRO**, **NURAY BEYAZ** and others arranged for soybeans sourced from the *M/V Blue Horizon* and *M/V Puffin S* to be shipped from Turkey to Baltimore, Maryland, aboard the *M/V Daiwan Fortune*.

Overt Act 44. On or about February 10, 2017, after Individual C in Company A expressed concern about the documentation and certification associated with the soybeans on the *M/V Crinis*, and asked that the *M/V Daiwan Fortune* be delayed, **GOKSAL BEYAZ** sent an email to Company A and Company B, stating that "I am managing this business please fulfill what I said, Please import it as regular goods. I will submit transaction certificates in case of[] you need."

Overt Act 45. On or about March 1, 2017, **MUSTAFA CAKIROGLU** wrote an email to Company A and Company B (with **GOKSAL BEYAZ** and **NURAY BEYAZ** copied) with the subject "RE: M/V DAIWAN FORTUNE" stating "Docs are being prepared now. We will send docs asap."

Overt Act 46. On or about March 14, 2017, **MUSTAFA CAKIROGLU** sent an email to Company A (with **GOKSAL BEYAZ** copied), which included two sets of documents related to the soybeans aboard the *M/V Daiwan Fortune*, one labeled "customs purposes" and the other labeled "Organic Purposes." In the email, **MUSTAFA CAKIROGLU** advised "Please use these docs considering the names given to each file." The "Organics Purposes" documents referred to the soybeans as "organic" whereas the "Customs Purposes" documents did not.

Overt Act 47. On or about April 6, 2017, after Company A asked for organic transaction certificates for soybeans shipped aboard the *M/V Crinis* and the *M/V Daiwan Fortune*, **MUSTAFA CAKIROGLU** advised via Skype that he did not have transaction certificates for

the soybeans shipped aboard either vessel.

18 U.S.C. §371
18 U.S.C. § 2

**COUNT TWO**
(Smuggling)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 30 of Count One are realleged and incorporated by reference herein.

2. On or about March 10, 2016, in the District of Maryland and elsewhere, Defendants,

**HAKAN AGRO,**
**HAKAN ORGANICS,**
**GOKSAL BEYAZ,**
**MUSTAFA CAKIROGLU,** and
**NURAY BEYAZ,**

and others known and unknown to the Grand Jury fraudulently and knowingly imported and brought into the United States merchandise, namely soybeans, contrary to the laws and regulations of the United States by: importing and bringing into the United States non-organic soybeans falsely labeled, represented, marketed, and sold as "organic soybeans" aboard the *M/V Sagittarius,* in violation of 7 U.S.C. §§ 6504, 6505, and 7 C.F.R. §§ 205.100, 205.102, and 205.105.

18 U.S.C. § 545
18 U.S.C § 2

**COUNT THREE**

(Smuggling)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 30 of Count One are realleged and incorporated by reference herein.

2. On or about April 14, 2016, in the District of Maryland and elsewhere, Defendants,

**HAKAN AGRO,**
**HAKAN ORGANICS,**
**GOKSAL BEYAZ,**
**MUSTAFA CAKIROGLU,** and
**NURAY BEYAZ,**

and others known and unknown to the Grand Jury fraudulently and knowingly imported and brought into the United States merchandise, namely corn, contrary to the laws and regulations of the United States by: importing and bringing into the United States non-organic corn falsely labeled, represented, marketed, and sold as "organic yellow corn" aboard the *M/V Harriett*, in violation of 7 U.S.C. §§ 6504, 6505, and 7 C.F.R. §§ 205.100, 205.102, and 205.105.

18 U.S.C. § 545
18 U.S.C. § 2

## COUNTS FOUR THROUGH NINE

(Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 30 of Count One are realleged and incorporated by reference herein.

2. Between in or about November 2015, and in or about May 2017, in the District of Maryland and elsewhere, Defendants, **HAKAN AGRO, HAKAN ORGANICS, GOKSAL BEYAZ, MUSTAFA CAKIROGLU, NURAY BEYAZ,** and others known and unknown to the Grand Jury executed a scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations, and promises, which they had previously devised among themselves.

3. As part of the scheme, **HAKAN AGRO, HAKAN ORGANICS, GOKSAL BEYAZ, MUSTAFA CAKIROGLU, NURAY BEYAZ**, and others purchased and caused the purchase of non-organic soybeans from Ukraine and arranged for the soybeans to be fumigated with aluminum phosphide while in transit to Turkey. Thereafter, the soybeans were exported to the United States for sale at higher prices associated with organic soybeans.

4. As part of the scheme, **HAKAN AGRO, HAKAN ORGANICS, GOKSAL BEYAZ, MUSTAFA CAKIROGLU, NURAY BEYAZ,** and others purchased and caused the purchase of non-organic corn from Romania. Thereafter, the corn was exported to the United States for sale at higher prices associated with organic corn.

5. As part of the scheme, **HAKAN AGRO, HAKAN ORGANICS, GOKSAL BEYAZ, MUSTAFA CAKIROGLU, NURAY BEYAZ,** and others provided false statements to Organic Certifiers 1 through 3. These false statements related to the source of the soybeans and corn as well as the organic status of this grain.

6. On or about the dates set forth in the table below, in the District of Maryland and elsewhere, Defendants,

**HAKAN AGRO,**
**HAKAN ORGANICS,**
**GOKSAL BEYAZ,**
**MUSTAFA CAKIROGLU,** and
**NURAY BEYAZ,**

and others known and unknown to the Grand Jury, having devised the scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations, and promises described herein, did knowingly transmit and cause to be transmitted by means of wire and radio communications in interstate and foreign commerce, writings, signs, and signals – specifically emails – for the purpose of executing the scheme and artifice:

| Count | Date | From | To | Subject | Description |
|---|---|---|---|---|---|
| 4 | 02/13/ 2017 | Individual B, Maryland, United States | Goksal.beyaz@ hakanfoods.com | RE: about sales of four diamond | Email transmitting information about sales of the *M/V Four Diamond* soybeans and requesting details about profit sharing |
| 5 | 02/23/ 2017 | Individual B Maryland, United States | Organic Customer A | *M/V Crinis*: Commercial Invoice and Customs Release Documents | Email transmitting Invoices #16 and #17 for payments related to the *M/V Crinis* |
| 6 | 03/02/ 2017 | Individual B, Maryland, United States | Mustafa.cakiroglu @hakanfoods.com | RE: Daiwan Fortune | Email transmitting Invoice No. 21 for partial payment relating to *M/V Daiwan Fortune* |
| 7 | 03/12/ 2017 | Goksal.beyaz@ hakanfoods.com | Individual C (cc: Individual B, Maryland, United Stated) | Re: Visit to [Company A] | Email providing information in advance of a visit by NOP to Company A |

| | | | | | |
|---|---|---|---|---|---|
| 8 | 04/18/ 2017 | Individual C | Individual B, Maryland, United States | Four Diamond – SC#1302394 | Email transmitting sales contract between Company A and Company B |
| 9 | 05/22/ 2017 | Individual B, Maryland, United States | Individuals A & C | Fwd: Crinis and Daiwan Fortune | Email transmitting Invoice Nos. 64 & 82, related to the *M/V Daiwan Fortune* and *M/V Crinis* |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNTS TEN THROUGH TWELVE

(Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 30 of Count One are realleged and incorporated by reference herein.

2. Between in or about November 2015, and in or about May 2017, in the District of Maryland and elsewhere, **HAKAN AGRO, HAKAN ORGANICS, GOKSAL BEYAZ, MUSTAFA CAKIROGLU, NURAY BEYAZ,** and others known and unknown to the Grand Jury, executed a scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations, and promises, which they had previously devised among themselves.

3. As part of the scheme, **HAKAN AGRO, HAKAN ORGANICS, GOKSAL BEYAZ, MUSTAFA CAKIROGLU, NURAY BEYAZ,** and others purchased and caused the purchase of non-organic soybeans from Ukraine and arranged for the soybeans to be fumigated with aluminum phosphide while in transit to Turkey. Thereafter, the soybeans were exported to the United States for sale at higher prices associated with organic soybeans.

4. As part of the scheme, **HAKAN AGRO, HAKAN ORGANICS, GOKSAL BEYAZ, MUSTAFA CAKIROGLU, NURAY BEYAZ,** and others purchased and caused the purchase of non-organic corn from Romania. Thereafter, the corn was exported to the United States for sale at higher prices associated with organic corn.

5. As part of the scheme, **HAKAN AGRO, HAKAN ORGANICS, GOKSAL BEYAZ, MUSTAFA CAKIROGLU, NURAY BEYAZ,** and others provided false statements to Organic Certifiers 1 through 3. These false statements related to the source of the soybeans and corn as well as the organic status of this grain.

6. On or about the dates set forth in the table below, in the District of Maryland and elsewhere, Defendant,

**HAKAN AGRO,**
**HAKAN ORGANICS,**
**GOKSAL BEYAZ,**
**MUSTAFA CAKIROGLU, and**
**NURAY BEYAZ,**

and others known and unknown to the Grand Jury, having devised the scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representation, and promises described herein, did knowingly transmit and cause to be transmitted by means of wire and radio communications in interstate and foreign commerce, writings, signs, and signals – specifically electronic money transfers – for the purpose of executing the scheme and artifice:

| COUNT | DATE | FROM | TO | AMOUNT | PAYMENT DETAILS |
|---|---|---|---|---|---|
| 10 | 2/7/2017 | **HAKAN AGRO, United Arab Emirates** | Company B, Maryland, United States | $107,603.00 | "PAID AGST INV-5" |
| 11 | 3/16/2017 | **HAKAN AGRO, United Arab Emirates** | Company B, Maryland, United States | $117,641.76 | "PAID AGST INV-21" |
| 12 | 3/21/17 | **HAKAN AGRO, United Arab Emirates** | Company B, Maryland, United States | $400,000 | "MV Crinis discharge cost on behalf of [Company A]" |

18 U.S.C. § 1343
18 U.S.C. § 2

**FORFEITURE ALLEGATION**

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 545, 981(a)(1)(C), and 982(a)(2)(B), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of a defendant's conviction on any of the offenses charged in Counts 1 through 12.

**Smuggling Forfeiture**

3. Upon conviction of any of the offenses set forth in Counts 1 through 3 of the Indictment, Defendants

**HAKAN AGRO,**
**HAKAN ORGANICS,**
**GOKSAL BEYAZ,**
**MUSTAFA CAKIROGLU,** and
**NURAY BEYAZ,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the smuggling offenses, and, pursuant to 18 U.S.C. § 545 and 28 U.S.C. § 2461(c), any merchandise introduced into the United States in violation of 18 U.S.C. § 545, or the value thereof.

**Wire Fraud Forfeiture**

2. Upon conviction of any of the offenses set forth in Counts 1 and 4 through 12 of the Indictment, Defendants

**HAKAN AGRO,**
**HAKAN ORGANICS,**
**GOKSAL BEYAZ,**
**MUSTAFA CAKIROGLU,** and
**NURAY BEYAZ,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud.

**Substitute Assets**

4. If any of the property described above, as a result of any act or omission of Defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

18 U.S.C. §§ 545, 981, 982
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Date:

TODD KIM
ASSISTANT ATTORNEY GENERAL

A TRUE BILL:

SIGNATURE REDACTED

Foreperson

8/4/2022
Date